## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| WHITNEY CABLE, TYLER SMITH, NICO ANTHONY SMITH, JOHN D SURFUS ENTERPRICE INC., and JOHN SURFUS RENTAL ACCOUNT INC., on behalf of themselves and others similarly situated, | ) ) ) ) ) ) ) ) |  |
| Plaintiffs, | ) ) | Case No. 1:20-cv-11293 District Judge |
| v. | ) ) | Mag. Judge |
| BOYCE HYDRO POWER, LLC, EDENVILLE HYDRO PROPERTY, LLC, BOYCE MICHIGAN, LLC, BOYCE HYDRO LLC, WD BOYCE TRUST 2350, WD BOYCE TRUST 3659, WD BOYCE TRUST 3650 LEE W. MUELLER, STEPHEN B. HULTBERG, and MICHELE G. MUELLER, | ) ) ) ) ) ) ) ) ) ) |  |
| Defendants. | ) ) / |  |

**MARKO LAW, PLLC**
Jonathan R. Marko (P72450)
1300 Broadway Street, 5th Floor
Detroit, MI 48226
P: (313) 777-7LAW
jon@jmarkolaw.com

**NICHOLS KASTER, PLLP**
Matthew H. Morgan (MN304657)
Rebekah L. Bailey (MN0387013)
4600 IDS Center, 80 S. Eighth Street

1

Minneapolis, MN  55402
P: (612) 256-3200
morgan@nka.com
bailey@nka.com

***Attorneys for Plaintiff and the Putative
Class***

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Whitney Cable, Tyler Smith, Nico Anthony Smith, and John D Surfus Enterprise Inc., and John Surfus Rental Account Inc. ("Plaintiffs"), on behalf of themselves and members of the proposed class defined below, and by and through counsel Marko Law, PLLC and Nichols Kaster, PLLP, state as follows for their Complaint against the above-named Defendants:

## <u>INTRODUCTION</u>

1.     After heavy rainfall and flash flooding, on or about May 19, 2020, the Edenville Dam's "earthen dike collapsed at the south end of Wixom Lake north of Midland" sending "the combined force of an impoundment and the Tobacco River . . . south toward Midland . . . ."  Garret Ellison, "Feds warned years ago Edenville Dam couldn't handle a historic flood," *Saginaw & Bay City* News (May 20, 2020), *available at* mlive.com.

2.     Shortly after the Edenville Dam broke, the floodwaters overtopped the Sanford Dam.  Although the Sanford Dam did not break, it did not stop or otherwise

prevent the floodwater from the north, from reaching the City of Midland or to property owners' homes that abut waterways connected to the Tittabawassee River.

3.     Over 10,000 people in Midland County and the surrounding areas have found themselves displaced—their surrounding homes underwater or severely damaged.

4.     The homes directly surrounding Wixom Lake, once beautiful lakeside properties, now abut a barren mud pit.

5.     This was not an unforeseen event, but rather the result of a decades-long failure to comply with regulatory requirements.

6.     As Plaintiffs allege more fully below, Defendants owned, operated or maintained the Sanford and Edenville Dams situated on the Tittabawassee River.

7.     Defendants knew or should have known that the dams could not sustain a major flood event.

8.     Defendants failed year after year to bring the dams into compliance with state and federal laws and regulatory requirements, making it safe for nearby persons and property.

9.     This disaster was an unfortunate matter of time.

10.     Plaintiffs are homeowners directly impacted by Defendants' negligence and the trespass and nuisance they caused.

11.     Plaintiffs now bring this class action seeking damages on behalf of themselves and other similarly situated owners of residential property under Michigan state law for breaches of duties owed.

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  Plaintiffs are citizens of the State of Michigan, and Defendants Lee W. Mueller and Michele Mueller are citizens of a different state. The amount in controversy in this action exceeds $5,000,000, and there are more than 100 members of the propose Class.

13.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c)(2) because Defendant does business in this District, Defendant is subject to personal jurisdiction in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## PARTIES

14.     Plaintiff Whitney Cable ("Cable") is an individual citizen of the State of Michigan and resides in Midland, Michigan.

15.     Plaintiff Tyler Smith ("T. Smith") is an individual citizen of the State of Michigan and resides in Midland, Michigan.

16.     Plaintiff Nico Anthony Smith ("N. Smith") is an individual citizen of the State of Michigan and resides in Midland, Michigan.

17.     Plaintiff John D. Surfus Enterprise Inc. ("Surfus Enterprise"), is a domestic limited liability corporation owned by John Surfus, which owns and rents out properties in the State of Michigan, County of Saginaw.

18.     Plaintiff John Surfus Rental Account Inc. ("Surfus Rental"), is a domestic limited liability corporation owned by John Surfus, which owns and rents outs properties in the State of Michigan, County of Saginaw.

19.     Defendant Edenville Hydro Property, LLC ("EHM") is a domestic limited liability company, formerly known as Boyce Trust Hydro Property 2350, LLC, which conducts business in the State of Michigan.  At all relevant times, EHM owns the Edenville Dam.

20.     Defendant Boyce Michigan ("BM") is a domestic corporation, which conducts business in the State of Michigan.  At relevant times, BM acquired and managed the Wixom Reservoir and Tittabawassee and Tobacco River bottomlands, and it owns the property upon which the Edenville Dam sits in Midland and Gladwin counties.

21.     Defendant Boyce Hydro LLC ("BH"), is a domestic corporation, which conducts business in the State of Michigan.  At all relevant times, BH operates at least the Edenville Dam on the Tittabawassee River in Midland and Gladwin counties.

22.     Defendant Boyce Hydro Power, LLC ("BHP"), formerly Synex Michigan, LLC, is a domestic corporation, which conducts business in the State of Michigan.  At all relevant times, BHP operates and funds the Sanford, Edenville, Smallwood, and Secord Dams on the Tittabawassee River in Midland and Gladwin counties.  BHP is the entity that held a license with the U.S. Federal Energy Regulatory Commission to operate the Edenville dam.

23.     Defendant WD Boyce of Trust 2350 ("Trust 2350") is a member of Edenville Hydro Property, LLC, a member of Boyce Michigan, LLC, a member of Boyce Hydro LLC, and a member of Boyce Hydro Power, LLC.  Through these memberships, Trust 2350 conducts business in the State of Michigan, Gladwin and Midland Counties.

24.     Defendant WD Boyce of Trust 3649 ("Trust 3649") is a member of Edenville Hydro Property, LLC, a member of Boyce Michigan, LLC, a member of Boyce Hydro LLC, and a member of Boyce Hydro Power, LLC.  Through these memberships, Trust 3649 conducts business in the State of Michigan, Gladwin and Midland Counties.

25.     Defendant WD Boyce of Trust 3650 ("Trust 3650") is a member of Edenville Hydro Property, LLC, a member of Boyce Michigan, LLC, a member of Boyce Hydro LLC, and a member of Boyce Hydro Power, LLC.  Through these

memberships, Trust 3650 conducts business in the State of Michigan, Gladwin and Midland Counties.

26.    Defendant Lee. W. Mueller ("Mueller") is an individual citizen of the State of Nevada.  Mueller is a co-trustee and beneficiary of the trust Defendants, which own the Defendant entities.  Mueller has also served as a member and co-manager of EHP, BM, BHP, and a member, employee, and co-manager of BH, responsible for operations of the Defendant entities.  Through them he conducts business in the State of Michigan.

27.    Defendant Stephen B. Hultberg ("Hultberg") is upon information and belief an individual citizen of the State of Michigan.  Hultberg is a co-trustee and beneficiary of the trust Defendants, which own the Defendant entities.  Hultberg is also a member and co-manager of EHP, BM, and BHP, and a member, employee, and co-manager BH.  Through these entities, he conducts business in the State of Michigan.

28.    Defendant Michele G. Mueller ("M. Mueller") is an individual citizen of the State of Nevada.  M. Mueller is a co-member of Defendant EHM, BM and BHP, and a member and employee of BH.

## FACTUAL ALLEGATIONS

*The Dams*

29.    Plaintiffs, on behalf of themselves and the proposed Class, reallege and incorporate the preceding paragraphs as though fully set forth herein.

30.    In 1925, the Edenville Dam (an earth-gravity dam) was completed in Michigan's Gladwin County, approximately west of Saginaw Bay. The Dam impounds both the Tittabawassee River and its tributary the Tobacco River, resulting in the formation of Wixom Lake.

31.    The Tittabawassee River extends down through Midland County to Saginaw County and is a major tributary to the Saginaw River.

32.    The Edenville Dam was created to generate hydroelectric power and for flood control.

33.    The Edenville Dam is about 6,600 feet long and up to 54.5 feet high.

34.    The 2,600-acre reservoir with a 49-mile shoreline behind the dam is the resulting formation: Wixom Lake.

35.    The Sanford Dam is downstream on the Tittabawassee.

36.    Defendants purchased the Edenville Dam in 2004.

37.    As a hydroelectric dam, the Edenville Dam is licensed and regulated by the U.S. Federal Energy Regulatory Commission, ("the Commission").

8

38.     The Commission's Dam Safety Guidelines require that,—for projects that would present a threat to human life or cause significant property damage in the event of a flood—the project must be designed to either withstand overtopping up to the probably maximum flood, or to the point where a failure would no longer constitute a hazard.  In the alternative, the capacity of the spillway must be adequate to prevent the reservoir from rising to an elevation that would endanger the safety of the project.[1]

39.     The spillway capacity is the maximum outflow flood which a dam can safely pass.

40.     Over time, the Commission has continuously put Defendants on notice of the fact that the Edenville Dam "could pose a significant risk to the Village of Sanford, Northwood University, the City of Midland, and other downstream areas" within the meaning of the Guidelines.  *In re Boyce Hydro Power, LLC*, 162 FERC ¶ 61,007, 2018 WL 305524, at *2 (Jan. 5, 2018).

41.     The Commission also put Defendants on notice that the Edenville Dam lacked, among other things, the necessary spillways to reduce the risk of failure as required by the Guidelines.

---

[1]     https://www.ferc.gov/industries/hydropower/safety/guidelines/eng-guide/chap2.pdf.

42.     Shortly after Defendants acquired the dam on September 23, 2004, in fact, the Commission's Regional Engineer sent a letter to Defendants requesting they submit designs in order to construct auxiliary spillways in 2005 and 2006.  *Boyce Hydro Power, LLC*, 159 FERC ¶ 62,292, 2017 WL 2619269, at *3 n.10 (June 15, 2017).

43.     Defendants ignored the request.

44.     At one point in 2009, Defendants committed to construct two auxiliary spillways in 2014 and 2015 respectively.  Defendants, however, never met their deadlines or completed the work.  *Boyce Hydro Power, LLC*, 2017 WL 2619269, at *4.

45.     Defendant Boyce Hydro was sued in 2012 by Tabacco Township, which alleged that the Edenville Dam required "significant repairs / new construction", and that "Defendant does not have the requisite funds to finance the Dam Project."  *Tobacco Twnshp v Boyce Hydro, LLC*, Case No 1:13-cv-12331.

46.     In 2014, the Commission again worked with Defendants in an effort to finalize a timeline for completing two spillways in 2015 and 2016.  Defendants again failed to meet these deadlines or even file "complete and adequate plans."  *Id.*

47.     According to the Commission in 2017:

Since acquiring the license in 2004, **the licensee has not filed adequate plans, specifications, or designs as directed by the Regional Engineer for addressing spillway capacity concerns at the project**. The licensee has failed to follow Regional Engineer directives

10

to meet the PMF, has consistently filed inadequate and untimely reports, studies, plans, and specifications in preparing for construction of risk reduction measures to address spillway capacity deficiencies, and has failed to acquire a necessary permit.

*Id.* The Commission sounded the alarm, finding:

> Thirteen years after acquiring the license for the project, the licensee has still not increased spillway capacity leaving the project in danger of a PMF event. **The licensee has shown a pattern of delay and indifference to the potential consequences of this situation. A situation that must be remedied in order to protect life, limb, and property**.

*Id.* at *5 (emphasis added).

48. On June 15, 2017, the Commission found Defendant to be in violation of the terms of its license and the regulations for, among other things, "failing to increase the spillway capacity of the project to address the probable maximum flood (PMF)." *Id.* The Commission explained:

> [T]he Commission's primary concern is the licensee's longstanding failure to address the project's inadequate spillway capacity. The Edenville dam has a high hazard potential rating, which **means a failure of the project's work would create a threat to human life and/or would cause significant property damage. The project's spillway deficiencies must be remedied.**

*Id.* at *1 (emphasis added).

49. On November 20, 2017, the Commission found Defendants to be in violation of the Federal Power Act (FPA), Commission regulations, and their license relating to the Edenville Dam. *Id.* In its order, the Commission noted:

> The Commission's primary concern with the Edenville Project is the licensee's longstanding failure to address the project's inadequate

> spillway capacity. The project's spillway deficiencies must be remedied. **Commission staff have worked with the licensee for over 13 years to address this problem but to no avail**. The licensee has similarly been unresponsive in addressing other compliance matters related to dam safety, recreation at the project, and property rights.

*In re Boyce Hydro Power, LLC*, 161 FERC ¶ 62,119, 2017 WL 5586862 (Nov. 20, 2017) (emphasis added).  As a result, Defendants had to cease their generation until further notice.

50.     In 2018, the Commission again noted that "Boyce has repeatedly failed to comply with requests by the Regional Engineer . . . to address the fact that **the project spillways are not adequate to pass the probable maximum flood, thereby creating a grave danger to the public**."  *In re Boyce Hydro Power, LLC*, 2018 WL 305524, at *2 (emphasis added).

51.     When Defendants lost their license, the dam came under the regulatory authority of the Michigan Department of Environment, Great Lakes, and Energy. The Michigan Department also had "strong concerns" about the dam's inadequate spillway capacity.

52.     At no time since 2018, and up until May 19, 2020, did Defendants increase the Edenville Dam's spillway capacity.  Ellison, *supra*.

53.     To be sure, Defendants publicly acknowledged that "the federal government had voiced concerns from 1993 through 2018 about the Edenville Dam's unsafe condition, specifically 'the risk of catastrophic erosion from

12

overtopping due to inadequate spillway capacity.'" Beth LeBlanc, "Dangers of Edenville dam failure evaded state scrutiny," *The Detroit News* (May 20, 2020).

54.     On May 19, 2020, following heavy rains and flash floods, the Edenville Dam's earthen dike collapsed eviscerating Wixom Lake and allowing a massive flood to spill out toward Midland.

55.     By early Wednesday morning, the Tittabawassee River crested at 33.9 feet in downtown Midland.  Ellison, *supra*.

56.     As a result, homes became submerged under water.  Tens of thousands were forced to evacuate and the National Guard has been deployed.

57.     Nearby Dow Chemical was forced to shut down as a precaution. Concerns mount that Dow's own dams may not be able to withstand the devastation unleashed by Defendants.

58.     Michigan Governor Gretchen Whitmer announced an "emergency declaration" on Tuesday, May 19, 2020.  Ellison, *supra*.

59.     On May 20, 2020, David Capka, director of the Division of Dam Safety and Inspections for FERC, directed Defendants in a letter to Defendant Mueller to "undertake a forensic analysis of the root cause of the overtopping damage to Sanford Dam as well as any other contributing causes." Roberto Acosta, "Federal regulators order Sanford Dam's owner to investigate after flood," *Saginaw & Bay City News* (May 20, 2020), *available at* Mlive.com.

***Defendants Mueller, Hultberg, and M. Mueller***

60.     As stated above, Defendants Mueller, Hultberg, and M. Mueller ("individual Defendants") co-manage the Edenville and Sanford Dams.

61.     As managers, the individual Defendants can manipulate the entity Defendants for their own interests.

62.     The individual Defendants, through the trust Defendants, own these dams to make a profit.

63.     The individual Defendants put their own interests above the safety of the residents and properties that surround their dams.

64.     In 2011, Defendant Mueller held himself out as the owner of the Sanford dam in an interview with mLive, arguing instead that the people who benefit from the lake should foot the bill.  Andrew Dodson, "Sanford Lake Dam Owner Says He's Not Paying for $83,000 Repair Project," *mLive* (Jan 28, 2011, updated Jan 21, 2019).

65.     Mueller threatened to drain Sanford lake if the community did not raise the funds for repairs.  *Id.*

66.     Additionally, Mueller made the intentional decision for the entity Defendants not to pay the more than $30,000 tax bill assessed on the dam from 20017–09, arguing the county's property records were "greatly and massively flawed." *Id.*

67.     Earlier this year, Mueller and some entity Defendants sued the State of Michigan relating to environmental rules applicable to the Edenville Dam. *Mueller v. Mich. Dep't of Env. Great Lakes, & Energy*, Case No. 1:20-cv-00364 (W.D. Mich.) (filed Apr. 29, 2020).  Mueller was personally named a plaintiff in the action. The underlying Enforcement Notice at issue in the lawsuit was issued against Mueller and entity Defendants.

68.     Earlier this year, the State of Michigan filed a lawsuit in Ingham County naming as defendants the entity Defendants, the trust Defendants, and the individual Defendants for their illegal and unauthorized draw down of Wixom Lake, which negatively impacted wildlife.  *State of Michigan v. Mueller*, No. 20-255 (Mich. Cir. Crt.) (filed Apr. 30, 2020).  The individual Defendants were named in their personal capacities.

**Plaintiff Cable**

69.     Plaintiff Cable resides at 5519 Nurmi Drive, Midland, Michigan, legally described as Lot 1, Nurmi Est Sub.  She has owned the residential house since 2018.

70.     Plaintiff's house abuts Sturgeon Creek, which is connected to the Tittabawassee River in Midland, Michigan.

71.     On May 20, 2020, Plaintiff's residential home suffered extreme damage as a result of flooding described herein.  Specifically:

a)      Plaintiff's residential home has standing water throughout the house ranging from one to three feet;

b)      The house's garage is damaged beyond repair along with all household equipment that was stored inside.

c)      All the floors are damaged.

d)      The house's walls, and appliances, including the water heater, are beyond repair.

72.      Plaintiff has additionally spent and will continue to spend considerable resources because of her displacement.

**_Plaintiff T. Smith_**

73.      Plaintiff T. Smith resides at 3101 Valorie Lane, Midland, Michigan, with a real property parcel number of 14-05-60-122.  Plaintiff has owned this property for approximately eight months.

74.      Plaintiff recently remodeled his entire house and outfitted it with newer furniture.

75.      On May 20, 2020, Plaintiff's single-family home suffered extreme damage as a result of flooding described herein.  Specifically, Plaintiff's residential home has standing water throughout the house at least as high as eight feet and everything in the house is ruined beyond repair.

76.      Plaintiff has additionally spent and will continue to spend considerable resources because of his displacement.

**Plaintiff N. Smith**

77.     Plaintiff N. Smith resides at 2400 St. Mary's Drive, Midland Michigan, legally described as Lot 3 St Marys Sub.  Plaintiff has owned this property since 2017.

78.     On May 20, 2020, Plaintiff's residence suffered extreme damage as a result of flooding described herein.

79.     Plaintiff has additionally spent and will continue to spend considerable resources from being displaced.

**Plaintiff Surfus Enterprises**

80.     Plaintiff Surfus Enterprises is the owner of the apartment complex at 7137 Gratiot Road, Saginaw, Michigan with a property parcel number of 28-12-3-25-4007-000.  Plaintiff has owned this property since 2011.

81.     Plaintiff's rental property has been badly damaged as a result of Defendants' actions and inactions.

82.     Plaintiff has also lost and will continue to lose income because of the dealing with the displacement of its tenants.

**Plaintiff Surfus Rental**

83.     Plaintiff Surfus Rental, owned by individual John Surfus, is the owner of two properties: 370 Adams Road, Saginaw, Michigan 48608 with a property parcel number of 28-12-4-30-3016-000 and 470 Adams Road, Saginaw, Michigan

48609 with a property parcel number of 28-12-4-30-3085-000.  Plaintiff has owned this property since 2017 and 2018 respectively.

84.    Plaintiff's rental property has been badly damaged as a result of Defendants' actions and inactions.

85.    Plaintiff has also lost and will continue to lose income because of dealing with the displacement of its tenants.

## CLASS ACTION ALLEGATIONS

86.    Plaintiffs, on behalf of themselves and the proposed Class, reallege and incorporate the preceding paragraphs as though fully set forth herein.

87.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

88.    Plaintiffs assert their claims on behalf of the following class:

All persons or entities who, as of May 20, 2020, owned residential property in Gladwin, Midland, or Saginaw Counties that was subjected to flooding within the forty-eight hours following the breach of the Edenville dam.

89.    **Fed. R. Civ. P. 23(a)(1)—Numerosity / Impracticality of Joinder**: The proposed Class is so numerous that joinder of all proposed Class Members is impracticable. On information and belief, there are at least 100 Class Members in the proposed Class, all of whom are or were subject to the conduct set forth herein and therefore suffered serious injury.

90.    Class members are identifiable using, among other resources, local property tax records.

91.    **Fed. R. Civ. P. 23(a)(2)—Commonality:** Common questions of law and fact exist as to all proposed Class Members. Among the common questions are, including but not limited to:

      a)    Whether Defendants owed a duty to Plaintiffs and the proposed Class members;

      b)    Whether Defendants failed to adequately maintain or otherwise operate the Sanford and Edenville Dams;

      c)    Whether the breach of the dams was foreseeable;

      d)    Whether Defendants' conduct caused Plaintiffs' and the proposed Class's damages;

      e)    Whether Defendants' conduct was negligent;

      f)    Whether Defendants' conduct qualifies as a nuisance;

      g)    Whether Defendants caused a trespass on Plaintiffs' and the Class Members' property; and

      h)    The nature and extent of the damages to which Plaintiffs and the Class Members are entitled.

92.    These questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

93.    **Fed. R. Civ. P. 23(a)(3)—Typicality:** The claims of Plaintiffs are typical of other members of the proposed Class, as they stem from the same courses of conduct and are based on the same theories of law.

94.     Further, Defendants are expected to raise common defenses to these claims, so that final relief is appropriate for the Class.

95.     **Fed. R. Civ. P. 23(a)(4)—Adequacy of Representation:** Plaintiffs will fairly and adequately represent the interests of the proposed Class and will serve diligently as class representatives. Their interests are aligned with those of the purported Class and they have retained counsel experienced in litigation involving the rights of individuals and class action litigation.

96.     This action is maintainable as a class action because Defendants have acted or refused to act on grounds that generally apply to the proposed Class, so that corresponding declaratory relief is appropriate respecting the proposed Class as a whole.

97.     **Fed. R. Civ. P. 23(b)**—The proposed Class should be certified under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this controversy and the convenient administration of justice.

98.     The illegal conduct is standardized; the proposed Class does not have an interest in individually controlling the prosecution of the case.

99.     Proceeding as a class action would be more management and would permit the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and judicial resources.

100.    A class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate. Numerous repetitive individual actions would also place an enormous burden on the courts, as they would be forced to take duplicative evidence and repeatedly decide the same issues concerning Defendants' conduct.

101.    The proposed Class should also be certified under Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2) because:

a)     The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members that would establish incompatible standards of conduct for Defendants;

b)     The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c)     Defendants have acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final and injunctive relief or corresponding declaratory relief with respect to the Class Members as a whole.

102.    Alternatively, this case can be maintained as a class action with respect to particular issues under Federal Rule of Civil Procedure 23(c)(4).

## CAUSES OF ACTION

### COUNT I:
### NEGLIGENCE

103.   Plaintiffs, on behalf of themselves and the proposed Class, reallege and incorporate the preceding paragraphs as though fully set forth herein.

104.   The acts and conduct of Defendants alleged above when considered under the laws of the State of Michigan, constitute negligence.

105.   Defendants owed a duty of care to those persons who own real property on or near waterways that are controlled, in part, by the dams owned, operated and maintained by Defendants.

106.   Defendants breached their duty to Plaintiffs and the proposed Class Members' safety, protection, and health by:

a)   Failing to maintain and operate the Edenville Dam in proper working order;

b)   Failing to maintain and operate the Sanford Dam in proper working order;

c)   Failing to maintain state and federal compliance measures regarding the Edenville Dam; and

d)   Specifically, consistently ignoring the Commission's warnings that their failure to increase the spillways would result in substantial loss of property and loss of life.

107.   It was foreseeable that Defendants' actions and omissions would result in injury to Plaintiffs as demonstrated by the Commission's persistent warnings.

108.    Defendants' negligence was the factual cause of Plaintiffs' and the proposed Class Members' injuries.

109.    Defendants' actions and inactions were the most immediate, efficient, and direct cause of Plaintiffs' and the Class Members' injuries.

110.    The conduct of the Defendants was so reckless as to demonstrate a substantial lack of concern for whether injury would result to those individuals who own property on or near waterways that are controlled, in part, by the dams owned, operated and maintained Defendants.

111.    As the direct and proximate result of Defendants' negligence Plaintiffs and the Class Members are entitled to recover all damages and relief available at law and equity.

## COUNT II:
## NUISANCE

112.    Plaintiffs, on behalf of themselves and the proposed Class, reallege and incorporate the preceding paragraphs as though fully set forth herein.

113.    Defendants' failure to properly operate, manage, and maintain Edenville and Sanford Dams caused a release of flood waters on the Plaintiffs' and potential Class members' properties.

114.    Defendants' failure to properly operate, manage, and maintain the Edenville and Sanford Dams, in compliance with the law and pertinent regulations as described herein constituted a nuisance.

115.  Such wrongful acts by Defendants was and is a foreseeable and proximate cause of injury to Plaintiffs' the proposed Class Members' persons and their property.

116.  The nuisances created by Defendants caused damages to the Plaintiffs and the proposed Class, and unreasonably interfered (and continues to unreasonably interfere) with their use and enjoyment of real and personal property.

117.  Defendants' conduct is the legal cause of the intentional, unreasonable, negligent, and/or reckless invasion of Plaintiffs' and the proposed Class Members' interests in the private use and enjoyment of their land.

118.  Defendants' conduct in performing acts or failing to act has caused one or more substantial, unreasonable, and intentional interference with Plaintiffs' and the Proposed Class Members' right to use and enjoy their property as discussed above.

119.  Accordingly, Plaintiffs on behalf of themselves and proposed Class members seek general damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries in a sufficient amount to compensate them for the injuries and losses sustained by Plaintiffs and the Proposed Class Members and to restore Plaintiffs and the Proposed Class members to their original position, including, but not limited to the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or

restoration, the value of the use of the continuous trespass, injury to persons, and direct and consequential damages flowing from the nuisance  which are the natural and proximate result of Defendants' conduct in an amount to be proved at trial, and exemplary or punitive damages.

## COUNT III:
## TRESPASS

120.   Plaintiffs, on behalf of themselves and the proposed Class, reallege and incorporate the preceding paragraphs as though fully set forth herein.

121.  Defendants' failure to properly operate, manage, and maintain Edenville and Sanford Dams caused a release of flood waters on the Plaintiffs' and the potential Class Members' property which was an unauthorized trespass.

122.   Upon information and belief, Defendants had exclusive control over the Edenville and Sanford Dams which caused damage to Plaintiffs and potential Class Members.

123.   The above-described affirmative, voluntary, and intentional acts were performed with willful intent.

124.   Defendants' wrongful actions resulted in the immediate and continued trespass, injury and damage to Plaintiffs and potential Class Members, their property, and their right of possession of their property.

125.   Based upon the above, Plaintiffs on behalf of herself and the Class, seek general damages from Defendants, in an amount to be determined at trial, directly

resulting from their injuries in a sufficient amount to compensate them for the injuries and losses sustained by Plaintiffs and potential Class members, and to restore Plaintiffs and potential class members to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injury to persons, consequential damages flowing from the trespass which are the natural and proximate result of Defendants' conduct, and exemplary or punitive damages.

## **RELIEF REQUESTED**

126.    WHEREFORE, Plaintiffs pray on behalf of themselves and the members of the proposed Class for entry of judgment finding and awarding as follows:

A.    Certifying the Class under Rule 23;

B.    For an Order adjudging that Defendants were negligent;

C.    For an Order adjudging that Defendants are liable for nuisance and trespass;

D.    For an award to Plaintiffs against Defendants, all relief available under Michigan law, to be determined at trial, with interest on such amounts;

E.      For an award to the Class Members against Defendants, all relief available under Michigan law, to be determined at trial, with interest on such amounts;

F.      For an award to Plaintiffs and the Class Members of actual damages, including those arising from loss of real property loss, loss of temporary or permanent living expenses, loss of use and enjoyment of property, diminution in value of the real property, humiliation, mental anguish, loss of reputation, emotional distress and other harm, in an amount in excess of $75,000 against Defendants;

G.      For an award of punitive damages in an amount to be determined at trial;

H.      For an award to Plaintiffs of their attorneys' fees, disbursements, and costs in this action available at law or in equity;

I.      For an award of prejudgment interest;

J.      For such other and further relief as the Court deems just and equitable.


Dated: May 22, 2020                          Respectfully Submitted:

                                             /s/Rebekah L. Bailey
                                             **NICHOLS KASTER, PLLP**
                                             Matthew H. Morgan (MN 304657)
                                             Rebekah L. Bailey (MN0387013)
                                             4600 IDS Center

80 South Eighth Street
Minneapolis, MN 55402
P: (612) 256-3200
F: (612) 338-4878
morgan@nka.com

**MARKO LAW, PLLC**
Jonathan R. Marko (P72450)
1300 Broadway Street, 5th Floor
Detroit, MI 48226
P: (313) 777-7LAW
jon@jmarkolaw.com


*On Behalf of Plaintiffs and the Putative Class.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| WHITNEY CABLE, TYLER SMITH, NICO ANTHONY SMITH, JOHN D SURFUS ENTERPRICE INC., and JOHN SURFUS RENTAL ACCOUNT INC., on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOYCE HYDRO POWER, LLC, EDENVILLE HYDRO PROPERTY, LLC, BOYCE MICHIGAN, LLC, BOYCE HYDRO LLC, WD BOYCE TRUST 2350, WD BOYCE TRUST 3659, WD BOYCE TRUST 3650 LEE W. MUELLER, STEPHEN B. HULTBERG, and MICHELE G. MUELLER,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) / | Case No. Case No. 1:20-cv-11293<br>District Judge<br>Mag. Judge |

## JURY DEMAND

Plaintiffs and the proposed class they represent hereby demand a trial by jury in the above-captioned matter.

Dated: May 22, 2020                    Respectfully Submitted:

/s/Rebekah L. Bailey

**NICHOLS KASTER, PLLP**
Matthew H. Morgan (MN 304657)
Rebekah L. Bailey (MN0387013)
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
P: (612) 256-3200
F: (612) 338-4878
morgan@nka.com

**MARKO LAW, PLLC**
Jonathan R. Marko (P72450)
1300 Broadway Street, 5th Floor
Detroit, MI 48226
P: (313) 777-7LAW
jon@jmarkolaw.com

***On behalf of Plaintiffs and the Putative Class.***